B27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT

Northern District of California

In re Celia Tenchavez,
   Debtor

Case No. 12-55615
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: CAPITAL ONE, N.A. - BEST BUY CO., INC.

2. Amount of the debt subject to this reaffirmation agreement:
   $ 1,837.56 on the date of bankruptcy    $ 1,400.00 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: _____ % prior to bankruptcy
   0 % under reaffirmation agreement ( ✓ Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 50.00 per month for 28 months

5. Collateral, if any, securing the debt: Current market value: $ 1837.56
   Description: 46'LED, HDMI CABLE, BLURY

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 16 | $2,624.97 | 7B. Monthly income from all sources after payroll deductions | $2,624.97 |
| 8A. Total monthly expenses from Schedule J, line 18 | $2,925.30 | 8B. Monthly expenses | $2,925.30 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $50.00 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $50.00 |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $[-350.33] |

B27 (Official Form 27) (12/09)                                                                                          Page 2

11. Explain with specificity any difference between the income amounts (7A and 7B):
    _____none_____
    _____

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    _____none_____
    _____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

X _[signature]_____                              _____
Signature of Debtor (only required if                        Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)                                  required if line 11 or 12 is completed)

### Other Information

☑ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: _I am receiving help from my sister to cover my monthly expenses._

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
_____ Yes        __✓__ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
_____ Yes        __✓__ No


### FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_[signature]_____
Signature
Jennifer Posley
Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

> Check one.
> ☐ Presumption of Undue Hardship
> ☐ No Presumption of Undue Hardship
> See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

In re ___Celia Tenchavez___,  Case No. 12-55615
       *Debtor*

Chapter 7

## REAFFIRMATION DOCUMENTS

Name of Creditor: CAPITAL ONE, N.A. - BEST BUY CO., INC.

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: ___Secured revolving account___
   *For example, auto loan*

B. **AMOUNT REAFFIRMED**: $ ___1400.00___

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is ___0___ %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)*  ☒ Fixed rate       ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑   $ 50.00 per month for 28 months starting on 12/20/12

☐   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

_____
_____

E. Describe the collateral, if any, securing the debt:

Description:            46'LED, HDMI CABLE, BLURY
Current Market Value    $ 1837.56

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?   $ 1400.00

☐ No. What was the amount of the original loan?   $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 1,837.56 | $ 1400.00 |
| Annual Percentage Rate | ____ % | 0 % |
| Monthly Payment | $ ____ | $ 50.00 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____
_____

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.   ☐ Yes   ☑ No

B. Is the creditor a credit union?

   Check one.   ☐ Yes   ☑ No

B240A, Reaffirmation Documents

Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions (take-home pay plus any other income)    $ 2,624.97

   b. Monthly expenses (including all reaffirmed debts except this one)    $ 2,925.30

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ [-350.33]

   d. Amount of monthly payment required for this reaffirmed debt    $ 50.00

   *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: I am receiving help from my sister to pay for my monthly expenses.

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents

Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date _____    Signature _____ Debtor

Date _____    Signature _____ Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor   CAPITAL ONE, N.A. - BEST BUY CO., INC.    C/O Bass & Associates, P.C., 3936 E. Ft. Lowell Ste 200, Tucson, AZ, 85712
           *Print Name*                                 *Address*

Jennifer Pursley
*Print Name of Representative*       *Signature*       10/16/12  *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____    Signature of Debtor's Attorney _____

               Print Name of Debtor's Attorney _____

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

    a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and

    i. if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

    ii. if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B.  INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# UNITED STATES BANKRUPTCY COURT

Northern __ District of California

In re Celia Tenchavez, 
    *Debtor*

Case No. 12-55615

Chapter 7

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because *(provide any additional relevant reasons the court should consider):*

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes):*

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: _____
    *(Debtor)*

_____
*(Joint Debtor, if any)*

Date: _____

B240C (Form B240C) (12/09)

# United States Bankruptcy Court
### Northern District of California

In re Celia Tenchavez,
          Debtor

Case No. 12-55615
Chapter 7

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) _____ has (have) filed a motion for approval of the reaffirmation agreement dated _____ _____ _____ made between the debtor(s) and creditor _____. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____ _____ _____ (date).

COURT ORDER:

☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____
United States Bankruptcy Judge

```
                        BEST BUY
                        00006858
                   SUNNYVALE  , CA 94087
                Store Phone Number 408 738 8680

                          SALE

Order:         Date: 02/14/12       Term ID: 060 Cashier#: 00207148
               08:03 PM

Product Code   Description          Quantity        Amount
2121725        UN46D6900 LED            1           1499.99
               3D SMARTV FULL
6715995        CA RECYCLE 10.00         1             10.00
3551973        SAMSUNG                  1              0.00
               BATTERY -
               OPERATED 3D
3551973        SAMSUNG                  1              0.00
               BATTERY -
               OPERATED 3D

                                    Subtotal       1509.99
                                    Tax             123.75
                                    Total          1633.74

Acct#:              8217
Payment Type: BBY CARD/HSBC
Amount: 1633.74
Card Type: PL2
Tran#: 06853770
Auth#: 051305
Auth-CD: ELEC
Manual Tran Ind:
Signature:


              KEEP YOUR RECEIPT!
         I HAVE READ AND AGREE TO ALL
          RETURN AND REFUND POLICIES
         PRINTED ON THE BACK OF THIS
           RECEIPT AND POSTED IN THE
         STORE. I HAVE RECEIVED GOODS
         AND/OR SERVICES IN THE AMOUNT
                  SHOWN ABOVE.
       BESTBUY.COM RETURN AND EXCHANGE
       INFORMATION AND PRICE MATCH POLICY
       MAY VARY SLIGHTLY FROM IN-STORE POLICY.
         PLEASE LOG ONTO WWW.BESTBUY.COM
              FOR COMPLETE DETAILS
          >>>>>>> ELECTRONIC COPY <<<<<<<
```

```
           BEST BUY
           00006858
        SUNNYVALE , CA 94087
    Store Phone Number 408 738 8680

                 SALE

Order:        Date: 04/09/12       Term ID: 030 Cashier#: 00141241
              03:23 PM

Product Code    Description          Quantity        Amount
3551973         SAMSUNG                 1             19.99
                BATTERY -
                OPERATED 3D
9892849         AUDIOQUEST -            1            169.99
                CARBON HDMI 1M
4793709         SAMSUNG BD-             1            149.99
                E5900 3D WI-FI BU
9987158         4YR 100-149.99          1             24.99
                BLU-RAY BTP

                                     Subtotal        364.96
                                     Tax              28.05
                                     Total           393.01

Acct#:              8217
Payment Type: BBY CARD/HSBC
Amount: 393.01
Card Type: PL2
Tran#: 06856576
Auth#: 031157
Auth-CD: ELEC
Manual Tran Ind:
Signature:

              [signature]

          KEEP YOUR RECEIPT!
     I HAVE READ AND AGREE TO ALL
       RETURN AND REFUND POLICIES
      PRINTED ON THE BACK OF THIS
       RECEIPT AND POSTED IN THE
     STORE. I HAVE RECEIVED GOODS
    AND/OR SERVICES IN THE AMOUNT
              SHOWN ABOVE.
   BESTBUY.COM RETURN AND EXCHANGE
   INFORMATION AND PRICE MATCH POLICY
   MAY VARY SLIGHTLY FROM IN-STORE POLICY.
      PLEASE LOG ONTO WWW.BESTBUY.COM
           FOR COMPLETE DETAILS
        >>>>>>> ELECTRONIC COPY <<<<<<<
```

## HSBC
### Terms and Conditions

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **27.99%** This APR will vary with the market based on the Prime Rate. |
| Penalty APR and When It Applies | **29.99%** This APR will vary with the market based on the Prime Rate. This APR may be applied to your account if you make a late payment. **How Long Will the Penalty APR Apply?:** If your APRs are increased for this reason, the Penalty APR may apply indefinitely. |
| How to Avoid Paying Interest on Purchases | Your due date is at least 23 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than **$2.00**. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

| Fees | |
|---|---|
| Annual Fee | NONE |
| Penalty Fees - Late Payment | Up to $35 |
| - Over-the-Credit Limit | NONE |
| - Returned Payment | Up to $25 |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)".
**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in this Cardholder Agreement.
You may pay the entire New Balance on your Account at any time.

AG3116 (8/11) CI

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement, unilateral statement under Section 766.59 of the Wisconsin Statutes, or court order under Section 766.70 of the Wisconsin Statutes adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. If you are married, by submitting your credit card application you are confirming that this credit card obligation is being incurred in the interest of your marriage and your family. If the credit card for which you are applying is granted, you will notify the Bank if you have a spouse who needs to receive notification that credit has been extended to you.

### CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with HSBC Bank Nevada, N.A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Best Buy to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "we", "us" and "our" refer to HSBC Bank Nevada, N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144. If based on your creditworthiness, we determine you do not qualify for Program A, you agree we may consider you for an account with the terms and conditions of Program B. If approved for Program B, you agree to its terms and conditions.

If your application is approved, "applicant" will be referred to as "primary cardholder" and "joint applicant" will be referred to as "secondary cardholder" for purposes of this agreement.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. ACCEPTANCE OF AGREEMENT:** By a) signing and submitting, or electronically or telephonically submitting the application, using or permitting others to use the Card, b) signing or permitting others to sign sales slips or c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, which includes an arbitration provision.

**3. PROMISE TO PAY:** You agree to pay all amounts charged to the Account, whether incurred by you or anyone you authorize or permit to use your Account or Card. If the Account is a joint Account, the applicant and joint applicant each agree to pay and are jointly and individually responsible for all amounts charged on the Account regardless of any divorce or other legal proceedings or any agreement that may affect liability between the applicant and the joint applicant. If either of you give us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, you will continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

**4. ABILITY TO REPAY:** When you use the Account or permit others to use the Account, you represent that you have the ability and intention to repay all amounts charged to the Account.

**5. BILLING STATEMENT:** We will send you a billing statement monthly for each billing cycle at the end of which you have a debit or credit balance in excess of $1.00, or in which an Interest Charge has been imposed. The billing statement will show all purchases, Interest Charges and other charges or fees, including credit insurance or debt cancellation (if applicable), and all payments and other credits posted to your Account during the billing cycle. The billing statement will show the amount owed on your Account. The total Amount owed is called "New Balance" on your billing statement subject to the terms of Promotional Credit Plan purchases, if any, as indicated below.

**6. PROMOTIONAL CREDIT PLANS:** The following Promotional Credit Plans may be offered from time to time as specified prior to or at the time of purchase: a) Waived Interest Charge Credit Plan – no Interest Charges will be imposed on the purchase for a specified period, as long as the Minimum Payment Due is paid when due each billing cycle; b) Same As Cash/Monthly Payment Credit Plan – if you pay the full cash sales price of the purchase before the promotional due date, as indicated on your billing statement, and pay the Minimum Payment Due when due each billing cycle, as indicated on your billing statement, no Interest Charges will be imposed on the purchase. If such payments are not so made, Interest Charges will be imposed from the purchase date; c) Reduced Rate Credit Plan – A reduced periodic rate will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle; d) Special Repayment Factor Credit Plan – A special repayment factor will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle; e) Special Repayment Factor/Reduced Rate Credit Plan – A special repayment factor and a reduced periodic rate will be applied to the purchase for the specified period as long as the Minimum Payment Due is paid when due each billing cycle. All purchases that do not fall under a Promotional Credit Plan are referred to as Regular Credit Plan purchases. **Certain rules apply to the allocation of payments and Interest charges on your promotional purchase if you make more than one purchase on your Card. Call 1-888-367-4310 or review the Application of Payments section of this Agreement for information.**

**7. INTEREST CHARGES:** (a) Interest Charges are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Interest Charge for the billing cycle is the sum of the Interest Charge for each Credit Plan, subject to the minimum Interest Charge under Section 8.

(b) Interest Charges are imposed on purchases from the transaction date until paid in full, except that no Interest Charge is imposed in a billing cycle on:

(i) a new purchase on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(ii) any balance on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(iii) a purchase on a Waived Interest Charge Credit Plan for the specified promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotion expiration date.

(c) If an Interest Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan, the amount will be determined by multiplying the applicable Daily Periodic Rate times the Daily Balance for the Credit Plan for each day in the cycle, and adding the results of those calculations together.

(d) If an Interest Charge is imposed on a Same As Cash Credit Plan during a cycle, the amount will be the sum of the following daily Interest Charge calculations for the Credit Plan during the current cycle and during each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase through the current cycle: (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the current cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

(e) The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, and adding 1) any new purchases made on the Credit Plan that day, 2) the previous day's Interest Charges, 3) any credit insurance premiums or debt cancellation fees (if applicable) incurred on that day and 4) any late fees, over the credit limit fees, returned payment fees or other fees incurred on that day and subtracting any payments or credits applied to the Credit Plan that day. If your Account is subject to a grace period during the billing cycle, payments made during that cycle will be subtracted from all Daily Balances in the current cycle. For any Same As Cash Credit Plan, credit insurance premiums or debt cancellation fees (if applicable) are not included in the Daily Balance of that Credit Plan during the promotional period. If a transaction for a returned payment or a dispute resolved in our favor posts after the beginning of the billing cycle, the applicable Daily Balance(s) and any related Interest Charge calculations will be adjusted retroactively to include the transaction amount as of the date of the original transaction.

(f) The Daily Periodic Rate which is used to determine your Interest Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one three hundred sixty fifth of the sum of the U.S. prime rate published in the Money Rates table of *The Wall Street Journal* that is in effect on the last day of the month ("Prime Rate") plus a "Spread" of 24.74 percentage points for the Standard Rate and a "Spread" of 26.74 percentage points for the Penalty Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month.

The maximum rate of Interest Charge for the Standard Rate is a Daily Periodic Rate of .08216% (corresponding **29.99% Annual Percentage Rate**). The maximum rate of Interest Charge for the Penalty Rate is a Daily Periodic Rate of .08216% (corresponding **29.99% Annual Percentage Rate**).

For example, as of the billing cycle beginning August 1, 2011, the Interest Charge for the Standard Rate would have been a Daily Periodic Rate of .07668% (corresponding **27.99% Annual Percentage Rate**) and the Interest Charge for the Penalty Rate would have been a Daily Periodic Rate of .08216% (corresponding **29.99% Annual Percentage Rate**). An increase in the Prime Rate will increase your applicable Daily Periodic Rate